

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| KEVIN WATSON,<br>                Petitioner,<br><br>vs.<br><br>S. NAPIER, *Warden, FCI Edgefield*,<br>                Respondent. | §<br>§<br>§<br>§ CIVIL ACTION NO. 0:24-6113-MGL<br>§<br>§<br>§ |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION,
GRANTING RESPONDENT'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT,
AND DISMISSING THE PETITION WITH PREJUDICE**

Petitioner Kevin Watson (Watson) filed this 28 U.S.C. § 2241 petition (the petition) against Respondent S. Napier, Warden, FCI Edgefield (Napier). Watson is representing himself.

The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge recommending to the Court Napier's motion to dismiss, or in the alternative for summary judgment, be granted and the petition be dismissed. The Report was submitted as per 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on June 10, 2025, and the Clerk of Court entered Watson's objections on June 27, 2025. Napier requested a long extension of time to file his reply to Watson's objections, which the Court granted. Napier filed his reply on August 8, 2025.

The Court has carefully considered Watson's objections, but holds them to be without merit. It will therefore enter judgment accordingly.

Here is a brief recitation of the relevant facts, as set forth in the Report:

> [Watson] is an inmate in the Federal Bureau of Prison's (BOP) Federal Correctional Institution in Edgefield, South Carolina (FCI Edgefield). On November 27, 2023, an FCI Edgefield staff member received information . . . [Watson] was actively posting through his Facebook account to Facebook Marketplace and [his] personal page. A review of the posts led staff to conclude . . . [Watson] had been in possession of a cell phone while incarcerated. [Watson] was charged with disruptive conduct based on his possession of a hazardous tool. He received a copy of the incident report on November 30, 2023. When advised of his rights, [Watson] had no comment, and the unit disciplinary committee referred the charges to a disciplinary hearing officer (DHO).
>
> [Watson] received notice of the hearing and of his rights on December 1, 2023, and chose to waive his right to a staff representative and to present witnesses. [Watson] appeared before the DHO on January 24, 2024. The DHO found [Watson] guilty of the charge and revoked forty-one days of good conduct time, among other sanctions.
>
> [Watson] attempted to appeal the DHO's decision in March 2024, but his appeal was rejected because he had not yet received a copy of the DHO's report. [Watson] was then provided a mostly blank DHO report by staff, indicating only the dates of the incident, incident report, and DHO hearing and certifying . . . the DHO report was not yet complete. [Watson] attempted to exhaust his administrative appeals using this mostly blank report. The DHO's complete report was signed on August 14, 2024, eight months after the hearing, and purportedly delivered to [Watson] on October 10, 2024. BOP's central office considered the completed report in light of [Watson's] appeals and upheld his disciplinary conviction in an October 30, 2024[,] administrative response.
>
> * * * * *
>
> [Watson] received a copy of the completed report either shortly before filing [the] [p]etition, as reflected on the report itself, or as an attachment to Respondent's motion, as [he] claims.

> \* \* \* \* \*
> [Napier] asserts . . . [Watson] was given the chance to amend his appeal after receipt of the completed report and chose not to do so. This assertion is supported by the Central Office's October 30, 2024 Administrative Remedy Response and a signed, handwritten note from Watson indicating he "would like to leave [his] BP-11 as is."

Report at 1-2, 6, 9 (citations omitted) (internal quotation marks omitted)**.**

When a prisoner "complain[s] . . . he had been deprived of good-time credits without notice or hearing and without due process of law[,] [the Supreme Court] consider[s] the claim a proper subject for a federal habeas corpus proceeding." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

The Due Process Clause of the Fourteenth Amendment imposes four requirements on prison disciplinary proceedings: "[1] prisoners . . . be afforded advance written notice of the claimed violation and [2] a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken[,]" *Wolff*, 418 U.S. at 563; "[3] the inmate facing disciplinary proceedings . . . be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals[,] *id* at 566; and "[4] [the decision maker be] sufficiently impartial[,]" *id*. at 571.

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent. Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Thus, "[u]pon a collateral review in habeas corpus proceedings, it is sufficient . . . there was some evidence from which the conclusion of the administrative tribunal could be deduced[.]" *United States ex rel. Vajtauer v. Comm'r of Immigr. at Port of N.Y.*, 273 U.S. 103, 106 (1927).

"Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.

Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

All Watson's objections concern the second *Wolff* requirement: Watson "be afforded . . . a written statement of the [DHO] as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563.

In Watson's first objection, he "asserts . . . he received a blank, unsigned DHO report, in lieu of the properly completed DHO report." Objections at 1. He says "[t]his prejudiced him in the appeals process." *Id.* This argument is related to his second objection: "the delay" in receiving the completed DHO report was "unreasonable." *Id*.

Numerous courts, however, have held inmates are unable to show they suffered any prejudice when they receive the DHO's report months after the hearing, and such multi-month delays fail to constitute a due process violation. *See, e.g., Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (concluding there was no due process violation when an inmate received the DHO's report eighteen months after his hearing "because [the inmate] had not demonstrated . . . he suffered any prejudice as a result of the eighteen-month delay, [and] he had received the process he was due under *Wolff*"); *Staples v. Chester*, 370 F. App'x 925, 929–30 (10th Cir. 2010) ("Assuming without deciding . . . a copy of the report was required [to be included with the administrative appeal], we do not conclude . . . the approximate eight-month delay in the DHO's tender of the copy to [the inmate] prejudiced his ability to bring an administrative appeal or rendered such an appeal futile."); *Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) ("[E]ven if [the inmate] did not receive the DHO's written report within [ten] days . . . the delay had no prejudicial effect on [the inmate's] administrative appeal and thus does not provide a basis for habeas relief.").

The Court agrees with the reasoning of these courts. Accordingly, the Court is unable to agree Watson suffered any prejudice because of the delay in receiving the DHO's report. As

such, because he is unable to establish a violation of his due process rights, the Court will overrule his first and second objections.

In Watson's third objection, he contends, "[h]ad [he had] ample time or even any notice whatsoever of the findings of the DHO report, he could have presented arguments and evidence, including aff[i]davits of the family member in charge of his social media accounts and metadata demonstrating . . . the 'selfie' in question was not taken at [FCI] Edgefield." Objections at 1.

But, to the extent Watson wanted to present arguments and evidence on appeal he could have, but failed to present at his disciplinary hearing, "[a]n inmate may not raise in an Appeal issues not raised in the lower level filings." 28 C.F.R. § 542.15(b)(2). Accordingly, the Court will overrule this objection, as well.

Fourth, according to Watson, he "was never given any opportunity to view the DHO report. . . . Had he been shown a copy of the amended DHO report, [he] would have certainly made amendments[ ]" to his appeal. Objections at 1-2.

Watson has failed to identify what substantive and meritorious arguments he was foreclosed from pursuing, relative to the DHO report, during administrative appeal. It appears the amendments Watson is referring to are the same as what he mentioned above: he would have "presented arguments and evidence, including aff[i]davits of the family member in charge of his social media accounts and metadata demonstrating . . . the 'selfie' in question was not taken at [FCI] Edgefield." *Id*. at 1.

But again, as set forth in 28 C.F.R. § 542.15(b)(2), "[a]n inmate may not raise in an Appeal issues not raised in the lower level filings." *Id.* Consequently, because Watson is unable to show any prejudice, the Court will also overrule this objection.

Fifth, Watson insists he "correctly and appropriately exhausted his remedies[.]" Objections at 2. But, as the Magistrate Judge stated, "[t]he record shows . . . [Watson] was able to exhaust his administrative remedies and [Napier] has not challenged exhaustion in this action." Report at 9. Thus, the Court will also overrule this objection.

Watson's remaining are so meritless as to make a discussion of them unnecessary. Therefore, the Court will overrule those objections, too.

In sum, as detailed in the Report, and as required by *Wolff*, (1) Watson was given advance notice of his alleged violation and (2) a written statement by the DHO of the evidence he relied upon and the reasons for the disciplinary action taken; (3) Watson was allowed to call witnesses and present evidence, although he declined to do so; and (4) Watson has failed to present anything to show the DHO was anything but impartial. And, "some evidence supports the decision by the prison disciplinary board to revoke [Watson's] good time credits." *Hill*, 472 U.S. 455. Thus, Watson received all the due process requirements to which he was entitled.

After a thorough review of the Report and the record in this case pursuant to the standards set forth above, the Court overrules Watson's objections, adopts the Report, and incorporates it herein. It is therefore the judgment of this Court Napier's motion to dismiss, or in the alternative for summary judgment, is **GRANTED** and the petition is **DISMISSED WITH PREJUDICE**.

To the extent Watson requests a certificate of appealability from this Court, that certificate is **DENIED**.

**IT IS SO ORDERED**.

Signed this 22nd day of September, 2025, in Columbia, South Carolina.

                                          /s/ Mary Geiger Lewis
                                          MARY GEIGER LEWIS
                                          UNITED STATES DISTRICT JUDGE

*****
**NOTICE OF RIGHT TO APPEAL**

Watson is hereby notified of the right to appeal this Order within sixty days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.